IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GIL YORO CONSTANTINO, ET AL., | CIVIL NO. 09-00066 DAE-RLP |
| Plaintiffs, | AMENDED FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AND/OR FOR DAMAGES FOR BREACH OF SETTLEMENT AGREEMENT AND FOR ATTORNEYS FEES |
| vs. | |
| U.S. BANK, N.A., TRUSTEE, ET AL., | |
| Defendants. | |

AMENDED FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AND/OR FOR DAMAGES FOR BREACH OF SETTLEMENT AGREEMENT AND FOR ATTORNEYS FEES[1]

Before the Court is Plaintiffs Gil Yoro Constantino and Gemma Guillermo Constantino's (collectively "Plaintiffs") Motion to Enforce Settlement and/or for Damages for Breach of Settlement Agreement and for Attorneys Fees, filed on April 8, 2011 ("Motion"). Plaintiffs request that the Court enforce a settlement agreement which was allegedly offered by Defendant/Counter-Claimant and Third-Party Plaintiff U.S. Bank National Association as Trustee for the Structured Asset Investment Loan Trust, 2006-BNC3 ("US Bank") on April 30, 2010,

---

[1] Within fourteen (14) days after a party is served with a copy of the Findings and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1)(B), file written objections in the United States District Court. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the Findings and Recommendation. If no objections are filed, no appellate review will be allowed.

accepted by Plaintiffs on May 10, 2010, and tentatively placed on the record on August 3, 2010.  On June 14, 2011, US Bank filed its Opposition, and on June 21, 2011, Plaintiffs filed their Reply.

This matter came on for hearing before the Court on July 5, 2011 at 10:00 a.m.  Plaintiff Gemma Constantino and John Harris Paer, Esq. appeared on behalf of Plaintiffs, and Bruce L. Lamon, Esq. appeared on behalf of US Bank.  Based on the following, and after careful consideration of the Motion, the supporting and opposing memoranda, declarations and exhibits attached thereto, the arguments of counsel, and the record established in this action, the Court HEREBY FINDS AND RECOMMENDS that Plaintiffs' Motion be GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

This action arises out of a note and mortgage executed by Plaintiffs in connection with their purchase of a home on or around May 26, 2006.  The mortgage lender, Meridan Financial Network, Inc. ("Meridan"), assigned the note and mortgage to US Bank.[2]  Wells Fargo Bank, N.A., doing business as America's Servicing Company ("ASC"), became the servicing agent for US Bank.  On or around January 21, 2009, ASC initiated non-judicial foreclosure proceedings against Plaintiffs.  On February 17,

---

[2] Meridan was originally named as a defendant to this action, but Plaintiffs dismissed their claims against it without prejudice on February 20, 2009.  See dkt. no. 5.

2009, Plaintiffs filed their Complaint for Damages and Injunctive Relief, alleging, among other things, Truth in Lending Act violations by Meridan. On April 15, 2009, US Bank filed a Counterclaim against Plaintiffs for foreclosure. According to US Bank, although Plaintiffs seek rescission of the loan, they have never tendered the loan proceeds and instead have retained possession of the property since 2008 without making mortgage or other payments to reduce the balance due.

On December 16, 2009, ASC sent a letter directly to Plaintiffs (without informing Plaintiffs' counsel), which "confirmed the formal approval of a loan modification/restructure of your mortgage loan," and enclosed a loan modification agreement. See Exh. A to Opposition at 1. To "facilitate this transaction," a payment of $5,232.62 was required up front, which "will be applied toward the accrued delinquency and other fees and costs that cannot be included in the modification." Id. Under this modification/restructure, Plaintiffs' first principal and interest payment of $3,537.11 was due on March 1, 2010 at an interest rate of 4.750%. Id.

According to US Bank's counsel, the terms set forth in the December 16, 2009 letter, including the up front payment, were offered by US Bank, subject to final documentation and US Bank approval, in a January 4, 2010 settlement conference with the Court, which counsel for both parties and Plaintiff Gemma Constantino attended. See Declaration of Bruce L. Lamon ("Lamon

3

Decl.") ¶ 3. Plaintiffs' counsel does not recall whether US Bank's counsel addressed the $5,232.62 up front payment at the settlement conference. See Reply at 7. The Court instructed US Bank to convey its authorized settlement offer to Plaintiffs' counsel by January 11, 2010. See Lamon Decl. ¶ 3.

On January 8, 2010, US Bank's counsel sent an email to Plaintiffs' counsel which attached a form of loan modification agreement that US Bank had authorized him to offer to Plaintiffs. See Exh. B to Opposition. The email states that US Bank's counsel believes that the attached loan modification agreement "conforms" to the terms that he stated at the January 4, 2010 settlement conference and "reflects the full extent of [US Bank's] settlement authority." Id. US Bank contends that the loan modification agreement sent via email on January 8, 2010 was the same as the one sent directly to Plaintiffs by ASC on December 16, 2009; however, no mention of the $5,232.62 up front payment is made. See Opposition at 3.

On April 30, 2010, US Bank's counsel sent an email to Plaintiffs' counsel which offered the same loan modification terms as the January 8, 2010 email, except that Plaintiffs' first payment would be due "sometime in June or July" 2010 instead of on March 1, 2010. See Exhs. B & C to Motion. Again, the $5,232.62 up front payment is not discussed.

On May 10, 2010, Plaintiffs accepted US Bank's April 30, 2010 offer as set forth in counsel's email correspondence.

4

See Exh. E to Motion. Plaintiffs' counsel stated that he assumed that the monthly payments would begin on July 1, 2010, but requested US Bank's counsel's input as to how he envisioned the mechanics of the settlement. Id. On May 13, 2010, US Bank's counsel emailed Plaintiffs' counsel, stating that she was "happy that our clients were able to reach a resolution." See Exh. F to Motion.

On June 14, 2010, ACS sent a letter directly to Plaintiffs, which "confirmed our conversation where we agreed to modification of your mortgage loan" and enclosed a new loan modification agreement. See Exh. J to Motion at 1. On June 18, 2010, US Bank's counsel forwarded Plaintiffs' counsel these documents. See Exh. C to Opposition. According to Plaintiffs' counsel, the documents reflected a modification that is "actually slightly more favorable" to Plaintiffs than the April 30, 2010 settlement offer allowed, including a lower interest rate, lower monthly payments, and a lower amount due on July 1, 2010. Id. at 1. This proposed modification required an up front payment of $5,066.67 (not $5,232.62 as stated in the December 16, 2009 letter) and decreased Plaintiffs' principal and interest payments to $3,531.47 at an interest rate of 4.375%. Id. at 2.

On July 30, 2010, Plaintiffs' counsel sent an email to US Bank's counsel to clarify the two settlement offers. See Exh. K to Motion. Plaintiffs' counsel stated his understanding that the agreed upon loan modification involved monthly principal and

interest payments of $3,537.11 and an interest rate of 4.750%. Id. Plaintiffs' counsel then stated that ASC's subsequent proposal seemed to require an additional up front payment of $5,066.47 with a slightly lower monthly payment and interest rate. Id.

On August 3, 2010, the parties attended a final pretrial conference with the Court. The settlement terms of the April 30, 2010 settlement offer were tentatively placed on the record. See Exh. D to Opposition. Plaintiffs contend that when US Bank's counsel stated the settlement terms before the Court, there was no mention of an up front payment. See Motion at 8. US Bank does not appear to dispute that the up front payment was not discussed at the final pretrial conference. See generally Opposition.

Due to the parties' disagreement regarding whether Plaintiffs owe the $5,232.62 up front payment, the settlement that was tentatively placed on the record on August 3, 2010, in accordance with the terms of the April 30, 2010 settlement offer, did not go forward. US Bank states, and Plaintiffs do not appear to dispute, that Plaintiffs have not made any payments under the terms of the April 30, 2010 settlement offer.

By the instant Motion, Plaintiffs seek to enforce the settlement agreement, which they say was offered by US Bank on April 30, 2010, accepted by Plaintiffs on May 10, 2010, and placed on the record on August 3, 2010. The parties appear to

agree that Plaintiffs' first principal and interest payment under this settlement agreement should have been $3.537.11 on July 1, 2010 at an interest rate of 4.750%.  Indeed, the parties' only point of contention appears to be whether the $5,232.62 up front payment was part of the settlement agreement.

ANALYSIS

**A.   Legal Standard for Enforcement of Settlement Agreement**

It is well settled that a district court has the equitable power to summarily enforce an agreement to settle a case pending before it.  In re City Equities Anaheim, Ltd., 22 F.3d 954, 957 (9th Cir. 1994); Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987).  However, a district court may only summarily enforce complete settlement agreements.  Id. at 890.  Where material facts concerning the existence or terms of a mutual, valid, and enforceable settlement agreement are in dispute, the parties must be allowed an evidentiary hearing.  Id.  See also Moran v. Guerreiro, 97 Hawai'i 354, 371, 37 P.3d 603, 620 (App. 2001).

Federal courts apply state contract law principles to the construction and enforcement of settlement agreements, even if the underlying cause of action is federal.  O'Neil v. Bunge Corp., 365 F.3d 820, 822 (9th Cir. 2004); United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992).  Under Hawaii law, "[w]here the evidence in the record

shows that all the essential elements of a contract are present, a compromise agreement among the parties in litigation may be approved by the court and cannot be set aside except on grounds that would justify rescission." Miller v. Manuel, 9 Haw. App. 56, 64, 828 P.2d 286, 292 (1991). "Generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it." Id. See also Amantiad v. Odum, 90 Hawaiʻi 152, 161, 977 P.2d 160, 169 (1999) (acknowledging the "well-settled rule that the law favors the resolution of controversies through compromise or settlement rather than by litigation").

To determine the validity of a settlement agreement, the court looks to the totality of the circumstances surrounding the making of the agreement. Assocs. Fin. Servs. Co. of Haw., Inc. v. Mijo, 87 Hawaiʻi 19, 29, 950 P.2d 1219, 1229 (1998). In order to be enforceable, a settlement agreement must have the traditional elements of a contract: offer and acceptance, consideration, and parties who have the capacity and authority to enter into the agreement. Amantiad, 90 Hawaiʻi at 162, 977 P.2d at 170. In addition, there must be mutual assent or a meeting of the minds on all essential elements or terms of the contract. Douglass v. Pflueger Haw., Inc., 110 Hawaiʻi 520, 531, 135 P.3d 129, 140 (2006).

A motion to enforce a disputed settlement agreement is treated as a motion for summary judgment.  See Gilmartin v. Abastillas, 10 Haw. App. 283, 296, 869 P.2d 1346, 1352 (1994). Under this standard, the court must determine whether the evidence presented to it indicates that there was no genuine issue of material fact and that the parties had entered into a valid compromise agreement as a matter of law.  Miller, 9 Haw. App. at 64, 828 P.2d at 292.  In ruling on a motion for summary judgment, the alleged facts and inferences logically drawn therefrom must be viewed in the light most favorable to the non-moving party.  Id. at 9 Haw. App. 65, 828 P.2d 292.  The moving party has the obligation to show through affidavit, deposition, or other evidentiary materials that there is no genuine issue of material fact.  Id.  Once the movant has satisfied this initial burden, the non-moving party must come forward with specific facts showing that there is a genuine issue of material fact. Id.

**B.   The April 30, 2010 Offer Was Validly Offered and Accepted**

US Bank does not dispute that the April 30, 2010 settlement offer was validly offered by US Bank and validly accepted by Plaintiffs on May 10, 2010, prior to the expiration of the offer.  Although US Bank's primary argument is it never intended to withdraw the requirement of an up front payment, which will be discussed in detail below, it also contends that

there was never any agreement as to the material term of when the monthly payments would begin. However, "[a] settlement agreement is not invalid because certain details are not worked out, where such details are not essential to the proposal and do not change its terms or purpose." Mijo, 87 Hawai'i at 32, 950 P.2d at 1232. Unlike a price term, a term specifying exactly when monthly payments would begin is not an essential term for the purposes of enforcing a settlement agreement. See Boskoff v. Yano, 217 F. Supp. 2d 1077, 1088 (D. Haw. 2001) (holding that an "essential term" of a settlement agreement is not one that a party views as essential to inducing his or her assent, but rather a term integral to the contract). Because all essential terms to the settlement agreement were present in the April 30, 2010 offer, such as the monthly principal and interest payment and interest rate, the Court finds that a valid offer to settle and acceptance thereof exists in this case.

**C. The April 30, 2010 Offer Did Not Include an Up Front Payment**

Courts apply the summary judgment standard to motions to enforce a disputed settlement agreements in order to "ensure that the purported compromise agreement sought to be enforced is truly an agreement of the parties." Miller, 9 Haw. App. at 63, 828 P.2d at 291. In Hawaii, summary judgment "should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues." Id. at 9 Haw. App. 65-

10

66, 828 P.2d 292 (quoting McKeague v. Talbert, 3 Haw. App. 646, 650, 658 P.2d 898, 903 (1983), *overruled on other grounds by* Roxas v. Marcos, 89 Hawai'i 91, 156, 969 P.2d 1209, 1274 (1998)). For this reason, courts will treat documents submitted in support of a motion for summary judgment differently from those in opposition. Id. at 9 Haw. App. 66, 828 P.2d 292. Although courts carefully scrutinize the materials submitted by the moving party to ensure compliance with the evidentiary requirements of Rule 56(e) of the Hawaii Rules of Civil Procedure,[3] they are more indulgent towards materials submitted by the non-moving party. Id.

Nevertheless, according to Hawaii law, it is "well settled that courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous." State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai'i 315, 324, 978 P.2d 753, 762 (1999). Indeed, even though ambiguous settlement agreements often render summary judgment inappropriate because they raise the question of the parties' intent, if the language of a settlement agreement is unambiguous, the interpretation of that agreement presents a question of law to be decided by the court. Wittig v. Allianz,

---

[3] Rule 56(e) requires, among other things, affidavits made on personal knowledge setting forth facts that would be admissible in evidence and sworn or certified copies of all papers referred to in affidavits.

11

A.G., 112 Hawai'i 195, 201, 145 P.3d 738, 744 (App. 2006). In addition, the determination of whether the contract contains ambiguous terms is a threshold question for the court to decide. Id. In interpreting a settlement agreement, the court is bound by the four corners of the document to determine whether an ambiguity exists. State Farm, 90 Hawai'i at 324, 978 P.2d at 762. Consequently, the parties' disagreement over the meaning of a settlement agreement's terms does not render clear language ambiguous. Id.

US Bank argues that there was no mutual assent or a meeting of the minds regarding the $5,232.62 up front payment. The existence of mutual assent is determined by an objective standard of reasonableness: a party's words or acts must show that he or she manifested an objective intention to agree. Earl M. Jorgensen Co. v. Mark Constr., Inc., 56 Hawai'i 466, 470, 540 P.2d 878, 982 (1975). Unexpressed intentions are "nugatory"[4] to ascertain the legal relationship between the two parties. Id. at 56 Hawai'i 470-71, 540 P.2d 982.

Viewing the facts and inferences logically drawn therefrom in the light most favorable to US Bank, as the non-moving party, the Court finds that no genuine issue of material fact exists as to whether US Bank mutually assented to a

---

[4] Black's Law Dictionary defines the term "nugatory" to mean "[o]f no force or effect; useless; invalid." Black's Law Dictionary 1093 (7th ed. 1999).

12

settlement agreement that did not include an up front payment. In so finding, the Court takes as true US Bank's counsel's assertion that US Bank tentatively offered the terms set forth in the December 16, 2009 letter, including the $5,232.62 up front payment, at the January 4, 2010 settlement conference. See Boskoff, 217 F. Supp. 2d at 1086 (stating that extrinsic evidence should be considered in assessing defenses to contract formation). However, the record clearly indicates that the Court instructed US Bank to convey its authorized settlement offer to Plaintiffs' counsel by January 11, 2010. Moreover, US Bank's January 8, 2010 settlement offer plainly states that it "reflects the full extent of [US Bank's] settlement authority." See Exh. B to Opposition. Most importantly, US Bank does not dispute that the loan modification agreement attached to the January 8, 2010 settlement offer, which was then reattached to the April 30, 2010 settlement offer and placed tentatively on the record on August 3, 2010, *did not include a provision requiring any up front payment by Plaintiffs*.

Looking within the four corners of April 30, 2010 settlement offer and the attached loan modification agreement, the Court finds that no ambiguity exists. US Bank's disagreement over whether Plaintiffs should have been required to make an up front payment does not render the clear language of the contract - which undisputably did not express such a requirement -

13

ambiguous. See State Farm, 90 Hawaiʻi at 324, 978 P.2d at 762. While US Bank might have intended to include a provision requiring an up front payment by Plaintiffs in its settlement offer, US Bank's unexpressed intentions are nugatory. See Standard Mgmt., Inc. v. Kekona, 99 Hawaiʻi 125, 134, 53 P.3d 264, 273 (App. 2001) (holding that "the purely subjective, or secret, intent of a party in assenting is irrelevant in an inquiry into the contractual intent of the parties"). For these reasons, the Court finds that, as a matter of law, the April 30, 2010 settlement offer was unambiguous and did not include a provision requiring any up front payment by Plaintiffs.

**C. There Was No Mutual Mistake as to the Terms of the April 30, 2010 Offer**

US Bank claims that even if there was a meeting of the minds, there was a mutual mistake as to whether the up front payment should have been included in the settlement agreement. Hawaii follows the Restatement (Second) of Contracts, which allows an adversely affected party who does not bear the risk of mistake to void a contract "[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances." AIG Haw. Ins. Co., Inc. v. Bateman, 82 Hawaiʻi 453, 457, 923 P.2d 395, 399 (1996) (quoting Restatement (Second) of Contracts § 152 (1979)). A party bears the risk of a mistake when: (a) the risk is allocated to him or

14

her by agreement of the parties; (b) he or she is aware, at the time the contract is made, that he or she has limited knowledge with respect to the facts to which the mistake relates but treats his or her limited knowledge as sufficient; or (c) the risk allocated to him or her by the court on the ground that it is reasonable in the circumstances to do so. Id. (quoting Restatement (Second) of Contracts § 154 (1979)).

The Court finds that there was no mutual mistake as to the terms of the April 30, 2010 settlement offer. Although US Bank might have intended to include a provision requiring an up front payment by Plaintiffs in its offer, there is no evidence in the record of a mutual mistake by Plaintiffs. To the contrary, as discussed above, the record is clear that US Bank failed express an up front payment requirement in its April 30, 2010 settlement offer. Moreover, even if there was a mutual mistake, where US Bank was the offeror and a sophisticated party represented by competent legal counsel, the Court finds that it is reasonable to allocate the risk of mistake to US Bank. As a result, the Court finds that no mutual mistake exists to void the settlement agreement in the present case.

**D. Plaintiffs' Failure to Perform Under Settlement Agreement Was Excused By US Bank's Repudiation**

US Bank finally argues that Plaintiffs' Motion should be denied because Plaintiffs failed to perform according to the terms of the settlement agreement. US Bank alleges that, at the

15

very latest, the first monthly payment would have been due in August 2010, with payments due monthly thereafter. Because Plaintiffs have not yet made any payments under the settlement agreement, US Bank contends that Plaintiffs are thus barred from enforcing it by their own material breach.

However, US Bank repudiated the settlement agreement when it refused to accept a settlement that did not include an up front payment by Plaintiffs. "Where performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance." Restatement (Second) of Contracts § 253(2) (1979). Therefore, the Court finds that, under the Restatement, US Bank's repudiation discharged Plaintiffs' duty to perform under the settlement agreement.

### E. Because No Material Facts are in Dispute, an Evidentiary Hearing is Not Necessary

If a court finds that a genuine issue of material fact exists with respect to enforcing a settlement agreement, the case should either be set for trial or an evidentiary hearing should be held as to whether there was a compromise agreement among the parties. <u>Miller</u>, 9 Haw. App. at 64-65, 828 P.2d at 292. Here, having concluded that, as a matter of law, the April 30, 2010 settlement offer was unambiguous and did not include a provision requiring any up front payment by Plaintiffs, and therefore no genuine issue of material fact exists, the Court finds that an

16

evidentiary hearing is not warranted.

## CONCLUSION

In accordance with the foregoing, the Court HEREBY FINDS AND RECOMMENDS that Plaintiffs' Motion to Enforce Settlement and/or for Damages for Breach of Settlement Agreement and for Attorneys Fees, filed on April 8, 2011, be GRANTED IN PART AND DENIED IN PART as follows:

(1) The settlement agreement that was offered by US Bank on April 30, 2010, accepted by Plaintiffs on May 10, 2010, and tentatively placed on the record on August 3, 2010, shall be enforced;

(2) Plaintiffs shall make monthly payments of principal and interest of $3,537.11 beginning on September 1, 2011, and no up front payment shall be required; and

(3) Upon motion of Plaintiffs to be filed within fourteen (14) days from the date this Amended Findings and Recommendation is acted upon, the Court will rule on the issue of Plaintiffs' entitlement to attorneys' fees and the amount of fees to be awarded, if any.

IT IS SO FOUND AND RECOMMENDED.

///

///

///

///

///

///

DATED: HONOLULU, HAWAII, AUGUST 1, 2011.



_____
Richard L. Puglisi
United States Magistrate Judge

CONSTANTINO V. U.S. BANK; CIVIL NO. 09-00066 DAE-RLP; AMENDED
FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AND/OR FOR DAMAGES FOR
BREACH OF SETTLEMENT AGREEMENT AND FOR ATTORNEYS FEES