IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GIL YORO CONSTANTINO AND GEMMA GUILLERMO CONSTANTINO, <br><br> Plaintiffs, <br> vs. <br><br> U.S. BANK, N.A., Trustee and MERIDIAN FINANCIAL NETWORK, INC., <br><br> Defendants. <br> _____ | ) ) ) ) ) ) ) ) ) ) ) ) ) | CV. NO. 09-00066 DAE-RLP |

ORDER ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND
RECOMMENDATIONS

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for
disposition without a hearing.  After reviewing the objections and the supporting
and opposing memoranda, the Court **ADOPTS** the Magistrate Judge's Findings
and Recommendations.  (Doc. # 74.)

BACKGROUND

The instant action arises out of a note and mortgage that Plaintiffs Gil
and Gemma Constantino ("Plaintiffs") executed in connection with the purchase of
a home in 2006.  ("FR," Doc. # 74, at 2.)  Meridian Financial Network, Inc.

("Meridian") assigned the note and Mortgage to U.S. Bank, National Association as Trustee for the Structured Asset Investment Loan Trust ("U.S. Bank").  (Id.) Wells Fargo Bank, N.A., doing business as America's Servicing Company ("ASC"), became the servicing agent for U.S. Bank.  (Id.)  On or around January 21, 2009, ASC initiated non-judicial foreclosure proceedings against Plaintiffs. (Id.)  On February 17, 2009, Plaintiffs filed their Complaint for Damages and Injunctive Relief, alleging, inter alia, Truth in Lending Act violations by Meridian. (Id. at 2–3; see also "Compl.," Doc. # 1.)  On April 15, 2009, U.S. Bank filed a Counterclaim against Plaintiffs for foreclosure.  (FR at 3; see also Doc. # 6.)

On December 16, 2009, ASC directly sent Plaintiffs a proposed loan modification agreement.  ("Dec. 16 letter," Doc. # 65-3.)  The loan modification agreement required a payment of $5,232.62 up front, which would "be applied toward the accrued delinquency and other fees and costs that cannot be included in the modification."  (Id. at 1.)  Per the modification, Plaintiffs' first principal and interest payment of $3,537.11 was due on March 1, 2010 at an interest rate of 4.750%.  (Id.)

U.S. Bank claims that the terms set forth in the December 16, 2009 letter were offered by U.S. Bank, subject to final documentation and U.S. Bank approval, in a January 4, 2010 settlement conference in front of then-United States

2

Magistrate Judge Leslie E. Kobayashi.  (FR at 3.)  Plaintiffs' counsel has stated that it does not recall whether the $5,232.62 up front payment was mentioned at the settlement conference.  (Id. at 4.)  Judge Kobayashi instructed U.S. Bank to convey its authorized settlement offer to Plaintiffs' counsel by January 11, 2010.  (Id.)

In compliance with Judge Kobayashi's directive, on January 8, 2010, U.S. Bank's counsel sent an email to Plaintiffs' counsel which had attached a loan modification form.  The email provided as follows:

> [A]ttached is a form of loan modification agreement we've been authorized to offer to your clients.  I believe it conforms to the loan modification terms I stated at the settlement conference and reflects the full extent of our settlement authority.  Let us know if you have any questions or comments.

(Doc. # 65-4.)  The agreement was substantively the same as the loan modification agreement sent directly to Plaintiffs by ASC on December 16, 2009, except that it excluded the $5,232.62 up front payment.  (FR at 4.)  Plaintiffs did not accept that offer and there was no settlement at that time.  ("Opp'n," Doc. # 80 at 3.)

On April 30, 2010, counsel for U.S. Bank sent an email to Plaintiffs' counsel as follows:

> Wells Fargo hereby offers to settle the Constantino matter by entering into a loan modification on the terms set forth in the attachment (with performance dates appropriately updated).  Please note that this proposed loan modification is on the same terms as proposed in my email to you of 1/8/10.  In other words, it has not been increased to

3

> reflect your client's use of the funds/non payment over the last 15+ weeks.  In addition, Wells Fargo is willing to pay $2,500 as and for your client's attorney fees.

(Opp'n, Ex. B., at 1.)  Counsel for both parties subsequently clarified that the "offer is the same except that payment would begin at sometime in June or July." (Opp'n, Exs. C, D.)  Once more, the $5,232.62 up front payment was not discussed.  On May 10, 2010, Plaintiffs' counsel accepted the April 30, 2010 settlement offer as set forth in counsel's email correspondence.  (Opp'n, Ex. E.)

On June 2, 2010, Plaintiffs' counsel wrote to U.S. Bank's counsel and stated that he was "still waiting to hear how you want to handle the mechanics of settlement. . . .  As we discussed, the dates were incorrect on the most recent loan modification form."  (Opp'n, Ex. G.)

By letter dated June 14, 2010, ACS sent a letter directly to Plaintiffs, which "confirmed our conversation where we agreed to modification of your mortgage loan" and enclosed a new loan modification agreement.  (Opp'n, Ex. J.) By email dated June 18, 2010, counsel for U.S. Bank forwarded the loan modification agreement to counsel for Plaintiffs.  (Doc. # 65-5.)  The proposed modification required an up front payment of $5,066.67 (not $5,232.62 as stated in

the December 16, 2009 letter) and decreased Plaintiffs' principal and interest payments to $3,531.47 at an interest rate of 4.375%.  (Id. at 2.)

On July 9, 2010, Plaintiffs reached out to counsel for U.S. Bank and stated as follows:

> I have tried to reach you . . . by telephone without success.  I am following up on my conversation with Bruce and my email to him of July 1 [sic], 2010.  Have you heard yet about the discrepancies we discussed?  What is the next step in going forward with the settlement?  My clients have been and are ready to proceed as we have agreed.

(Opp'n, Ex. H.)  Later that day Counsel for U.S. Bank responded stating that the "ball is in my court to follow up with client."  (Opp'n, Ex. I.)  On July 30, 2010, Plaintiffs' counsel reached out for further clarification on the proposed terms of the settlement.  (Opp'n, Ex. K.)

On August 3, 2010, the parties attended a final pretrial conference in front of Judge Kobayashi.  The settlement terms of the April 30, 2010 offer were tentatively placed on the record.  (FR at 6.)  Plaintiffs contend that when U.S. Bank's counsel stated the settlement terms before the Court, there was no mention of an up front payment.  (Id.; Opp'n at 7.)  U.S. Bank does not dispute that the up front payment was not discussed at the final pretrial conference.  (FR at 6.)

On August 11, 2010, counsel for U.S. Bank stated in an email to

counsel for Plaintiffs as follows:

> [A]s we discussed, my client always intended that the settlement
> include the initial $5K contribution, as reflected by the loan
> modification cover letter to the Constantinos and corroborated by the
> alternative settlement it proposed in June with the same contribution.
> My client contends that your client understood this as well from
> having received the cover letter and that our agreement not including
> this term is a result of mutual mistake.

(Opp'n, Ex. L.)  Counsel for Plaintiffs responded stating that U.S. Bank's position

> is simply not correct.  You made an offer and we accepted, and finally
> (after much delay) we placed the settlement on the record with no
> mention of any $5000 'contribution'.  Neither I nor my clients were
> aware of any additional $5000 payment when we accepted your offer.
> In addition, the $2500.00 in attorneys fees was based on a prompt and
> normal completion of the settlement which has not occurred due to
> unreasonable delay by your client.

(Opp'n, Ex. M.)

On April 4, 2011, after nearly eight months and at least five settlement

conferences, Plaintiffs filed a Motion to Enforce Settlement and/or for Damages

for Breach of Settlement Agreement and for Attorneys Fees ("Plaintiffs' Motion").

(Doc. # 62.)  On August 1, 2011, United States Magistrate Judge Richard L.

Puglisi issued the instant Findings and Recommendations, which recommended

this Court grant, in part, the relief Plaintiffs requested.  (Doc. # 74.)  On August 15,

2011, U.S. Bank filed their Objections to Judge Puglisi's Findings and

Recommendations.  ("Obj," Doc. # 78.)  On August 26, 2011, Plaintiffs filed their

Opposition.  (Doc. # 80.)

## STANDARD OF REVIEW

Any party may serve and file written objections to proposed findings

and recommendations.  See 28 U.S.C. § 636(b).  Pursuant to Local Rule 74.2,

when a party objects to a magistrate judge's dispositive order, findings, or

recommendations, the district court must make a de novo determination.  A de

novo review means "the court must consider the matter anew, the same as if it had

not been heard before and as if no decision previously had been rendered."  U.S.

Pac. Builders v. Mitsui Trust & Banking Co., 57 F. Supp. 2d 1018, 1024 (D. Haw.

1999) (citation omitted).

"The court may 'accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate.'  The court also may receive

further evidence or recommit the matter to the magistrate with instructions."

McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc., 656 F.2d 1309, 1313

(9th Cir. 1981) (citation omitted); Local Rule 74.2.

## DISCUSSION

U.S. Bank has three principle objections Judge Puglisi's Findings and

Recommendations.  First, U.S. Bank "generally objects to the Recommendation on

the grounds set forth in its opposition to [Plaintiffs'] Motion."  (Obj. at 1–2.)  U.S.

Bank spends the rest of its Objections placing "particular emphasis . . . upon two

particular concerns."  (Id. at 2.)  First, U.S. Bank objects that "the

Recommendation could be construed to as allowing Plaintiffs to skip 14 monthly

payments due under the contract the Recommendation would enforce."  (Id.)

Second, U.S. Bank "objects to the Recommendation as inviting consideration of a

motion from Plaintiffs to determine their entitlement to attorney fees where it is

undisputed Plaintiffs skipped 14 monthly payments and are therefore are in

substantial and material breach of the settlement agreement if it were to be

enforced."  (Id.)

I.      The Settlement Agreement

         The Court agrees with Judge Puglisi that the "settlement agreement

that was offered by U.S. Bank on April 30, 2010, accepted by Plaintiffs on May 10,

2010, and tentatively placed on the record on August 3, 2010" is enforceable.  (FR

at 17.)

         It is well settled that a district court has inherent authority to enforce

agreements that settle litigation before it.  See In re City Equities Anaheim, Ltd.,

22 F.3d 954, 957 (9th Cir. 1994) ("This circuit also recognizes a trial court's

inherent enforcement power."); Calli v. Near, 829 F.2d 888, 890 (9th Cir. 1987)

("It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it.").  Upon breach of a settlement agreement, the court may award damages or specific performance as appropriate. TNT Marketing, Inc. v. Agresti, 796 F.2d 276, 278 (9th Cir. 1986) (citing Village of Kaktovik v. Watt, 689 F.2d 222, 230 (D.C. Cir. 1982)).  A district court, however, may only summarily enforce complete settlement agreements.  Callie, 829 F.2d at 890.  Where material facts concerning the existence or terms of a mutual, valid, and enforceable settlement agreement are in dispute, the parties must be allowed an evidentiary hearing.  Id.; see also Moran v. Guerreiro, 37 P.3d 603, 620 (Haw. App. 2001).

"Typically, '[t]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally.'" O'Neil v. Bunge Corp., 365 F.3d 820, 822 (9th Cir. 2004). As with other contracts, Hawaii law "requires that there be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding" settlement agreement.  Boskoff v. Yano, 217 F. Supp. 2d 1077, 1088 (D. Haw. 2001).  The existence of mutual assent is determined by an objective standard, whereby a "party's words or acts are judged under a standard of reasonableness in determining whether he or she has manifested an objective intention to agree."

9

Standard Mgt., Inc. v. Kekona, 53 P.3d 264, 273 (Haw. App. 2001) (citation omitted); see also Buskoff, 217 F. Supp. 2d at 1088 ("To determine whether there was a 'meeting of the minds' the Court will consider the parties' correspondence leading up to the settlement agreement.").

"Where the evidence in the record shows that all the essential elements of a contract are present, a compromise agreement among the parties in litigation may be approved by the court and cannot be set aside except on grounds that would justify rescission." Miller v. Manuel, 828 P.2d 286, 292 (Haw. App. 1991). "Generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it." Id.; see also Amantiad v. Odum, 977 P.2d 160, 169 (Haw. 1999) (noting the well-settled rule that the law favors the resolution of controversies through compromise or settlement rather than by litigation").

Further, courts may not "draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous." State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 978 P.2d 753, 762 (Haw. 1999). Indeed, if the language of a settlement agreement is unambiguous, the interpretation of that agreement presents a question of law to be decided by the court. Wittig v. Allianz, A.G., 145 P.3d 738, 544 (Haw. App. 2006). In interpreting a settlement

agreement, the court is bound by the four corners of the document to determine whether an ambiguity exists.  State Farm, 978 P.2d at 762.  Consequently, the parties' disagreement over the meaning of a settlement agreement's terms does not render clear language ambiguous.  Id.

U.S. Bank opposed Plaintiffs' Motion on three principle grounds:

- Plaintiffs knew or had reason to know from the December 19, 2009 letter as reiterated at the January 4, 2010 settlement conference that the loan modification would require in addition and separately a payment of $5,232.62.  By failing to include this term in the offer, there was no meeting of the minds on this term or there was a mutual mistake as to whether it was a part of the contract.

- There was never an agreement on the material term of when the monthly payments would begin.

- In any event, Plaintiffs failed to perform or tender performance according to the terms as alleged because they have not made a monthly payment on the contract.

(Obj, Ex. B at 7–8.)  None of these arguments are persuasive.

As a preliminary matter and as Judge Puglisi found, U.S. Bank does not contest that it validly offered Plaintiffs a settlement that did not include the up front payment term on April 30, 2010. (FR at 9.)  Nor does U.S. Bank contest that Plaintiffs validly accepted that offer on May 10, 2010. (Id.)  The Court therefore finds there was a valid offer and acceptance of a settlement agreement that did not include an up front payment of over $5,000.

Turning to U.S. Bank's first argument, while Plaintiffs knew or had reason to know that U.S. Bank had considered requesting an up front payment of over $5,000 dollars, they had no reason to believe that this term was a part of U.S. Bank's April 30, 2010 offer.  U.S. Bank initially proposed a settlement to Plaintiffs which included the up front payment of $5,232.62 subject to U.S. Bank approval at the January 4, 2010 settlement conference.  Judge Kobayashi then instructed U.S. Bank to convey its authorized settlement offer to Plaintiffs' counsel by January 11, 2010.  U.S. Bank made their offer on January 8, 2010 without any mention of an up front payment and represented that it was "the full extent of [U.S. Bank's] settlement authority."  U.S. Bank made the same offer again in April, which Plaintiffs accepted.

There was no mention of the up front payment in either the January 8, 2010 offer nor the April 30, 2010 offer.  Plaintiffs had no reason to suspect that it

12

was a part of the agreement, especially in light of the fact that U.S. Bank

represented that the offer represented the "full extent" of their settlement authority.

It may be that U.S. Bank intended to include the term in both offers, but this is

immaterial.  See Std. Mgmt., Inc. v. Kekona, 53 P.3d 264, 273 (Haw. App. 2001)

(holding that "the purely subjective, or secret, intent of a party in assenting is

irrelevant in an inquiry into the contractual intent of the parties").  The terms of the

offer were plain, clear, unambiguous, and did not include any mention of an up

front payment.  The Court in these circumstances will not draw inferences

regarding the parties' intent.  See State Farm, 978 P.2d at 762.  The settlement

agreement speaks for itself.

Moreover, there was no mutual mistake.  As discussed, Plaintiffs had

no reason to assume that the up front payment term would be a part of the contract.

Even if there had been a mistake, as Judge Puglisi found, U.S. Bank bore the risk

of mistake.  A party bears the risk of mistake when "the risk is allocated to him or

her by the court on the ground that it is reasonable in the circumstances to do so."

AIG Haw. Ins. Co., Inc. v. Bateman, 923 P.2d 395, 399 (Haw. 1996).  Here, U.S.

Bank was a sophisticated offeror and represented by competent legal counsel.  The

fault can be said to fall squarely on U.S. Bank for failing to include the up front

payment term in both of its offers.  This is especially so given that Plaintiffs had no

reason to believe the term should have been included and U.S. Bank represented that the offer was "the full extent of [U.S. Bank's] settlement authority."  Under these circumstances, the Court concludes, as Judge Puglisi did, that it is reasonable to allocate the risk of mistake to U.S. Bank.

Nor is the Court persuaded by U.S. Bank's second argument that an essential term was omitted such that a contract was not formed.  "To be enforceable, a contract must be certain and definite as to its essential terms." Boteilho v. Boteilho, 564 P.2d 144 (Haw. 1977) (citation omitted).  However, "[a] settlement agreement is not invalid because certain details are not worked out, where such details are not essential to the proposal and do not change its terms or purpose."  Assocs. Fin. Servs. Co. of Haw. v. Mijo, 950 P.2d 1219, 1232 (Haw. 1998).  Indeed, "[a]n 'essential term' . . . is not merely a term that one of the parties views as 'essential to inducing his or her assent, . . . but rather a term integral to the contract itself, such as a price term specifying the monthly rent or a term indicating how rent should be calculated[.]"  Boskoff, 217 F. Supp. 2d at 1088.

The Court finds that all essential terms to the settlement agreement were present in the April 30, 2010 offer, such as the monthly principal, interest payments, and interest rates.  That the specific mechanics of the settlement

agreement, such as the first date of payment, had not been worked out is immaterial.

In sum, the Court finds the settlement agreement was plain, clear and unambiguous as to its essential terms.  It did not include an up front payment term nor a specific date when payments were due to start.

II.    Repudiation and Attorney's Fees

The final argument U.S. Bank raised in opposition to Plaintiffs' Motion, the extent to which Plaintiffs' failure to pay in accordance with the terms of the settlement agreement affects Plaintiffs' Motion, is the primary focus of its Objections before this Court.[1]  Judge Puglisi resolved this issue by concluding that U.S. Bank's repudiation excused Plaintiffs' failure to perform under the settlement agreement.  (FR at 15–16.)  Judge Puglisi recommended to this Court that the settlement agreement should be enforced beginning September 1, 2011.

"An anticipatory repudiation refers to a breach of contract 'committed before the time specified for performance . . . has arrived.'"  Kersh v. Manulife Financial Corp, --- F. Supp. 2d ---, 2011 WL 2135359, at *5 (D. Haw. May 31,

---

[1] As discussed, U.S. Bank's arguments discussed supra were raised in the Objections only to the extent that U.S. Bank states that it "generally objects to the Recommendation on the grounds set forth in its opposition to [Plaintiffs'] Motion." (Obj. at 1–2.)

2011) (quoting 17A Am. Jur. 2d § 716); see also Restatement (Second) of

Contracts § 250 (1979) ("A repudiation is . . . a statement by the obligor to the

obligee indicating that the obligor will commit a breach that would of itself give

the obligee a claim for damages for total breach ."). When the doctrine applies,

"the injured party has the option to sue either when the anticipatory repudiation

occurs or at the later time for performance under the contract." Kersh, 2011 WL

2135359, at *5. Moreover, "[w]here performances are to be exchanged under an

exchange of promises, one party's repudiation of a duty to render performance

discharges the other party's remaining duties to render performance." Restatement

(Second) of Contracts § 253(2).

      The application of this doctrine here is straight forward. U.S. Bank

repudiated the settlement agreement when it refused to settle the case as agreed.

Once that occurred, Plaintiffs were under no obligation to uphold their end of the

agreement, specifically, to make monthly payments in compliance with the loan

modification agreement. See id.

      U.S. Bank contends that

> the Recommendation explains both too much and too little. Too
> much, because if Plaintiffs are discharged from their obligations under
> the settlement agreement, why then must they start making payments
> on September 1, 2011 or indeed at any time? Too little, because if
> Plaintiffs are discharged, the Recommendation gives no explanation

for <u>enforcing an agreement from which the Plaintiffs are to be discharged</u>.

(Obj. at 4.)  In making this argument, U.S. Bank overlooks the basic fundaments of contract law.  In requesting the Court to enforce the settlement agreement, Plaintiffs are not merely seeking a discharge of their obligations under the settlement agreement,[2] but also seek to recover the benefit of their bargain.  Indeed, "[j]udicial remedies [in contract law] . . . serve to protect [a party's] 'expectation interest,' which is his interest in having the benefit of his bargain by being put in <u>as good a position as he would have been in had the contract been performed</u>." Restatement (Second) Contracts § 344 (emphasis added).  Relieving Plaintiffs of their obligations under the settlement agreement hardly places Plaintiffs in as good a position they would have been otherwise had U.S. Bank adhered to the terms of the settlement agreement; Plaintiffs would still have to litigate a federal lawsuit. Instead, Plaintiffs, by filing their Motion to Enforce, are effectively seeking a decree of specific performance from this Court.  This is an appropriate remedy under these circumstances.  <u>Id.</u> § 253 cmt. b ("Of course, in appropriate circumstances, the injured party can, after a breach by repudiation alone, pursue alternative relief by seeking, for example, a decree of specific performance or an

---

[2] Though to be certain, they seek a discharge of their obligations from the time of the repudiation until present.

injunction."); see also TNT Marketing, 796 F.2d at 278 (noting that upon breach of

a settlement agreement, the court may award damages or specific performance as

appropriate).  U.S. Bank's argument here misses this larger point—Plaintiffs are

entitled to the benefit of the bargain to which they agreed.  Moreover, it is

appropriate under these circumstances to excuse Plaintiffs' performance due to

U.S. Bank's repudiation of the settlement agreement pending judicial enforcement

of the settlement agreement.

U.S. Bank also relies upon Golf Carts, Inc. v. Mid-Pacific Country

Club, 493 P.2d 1338 (Haw. 1972), to argue that it never repudiated the settlement

agreement.  There the parties disagreed as to the duration of a 70%–30% division

of golf cart rental proceeds.  Id. at 1139.  The party who was actually collecting the

rental proceeds continued to retain 70% of the proceeds after the other party

thought the contract called for only 50% of the proceeds to be obtained and sought

rescission on the grounds of repudiation.  Id.

The Hawaii Supreme Court refused to find repudiation, instead stating

that "the disagreement was nothing more nor less than an attempt on the part of

each party to insist on performance according to his own interpretation of the

contract terms."  Id. at 1340.  The Court went on to hold:

> A repudiation which may be treated as a breach justifying non-performance by the other party must be distinct, unequivocal and absolute refusal to perform according to the terms of the agreement. . . .
> As we interpret the authorities, appellant's remedy was to tender performance according to his own interpretation of the agreement, or according to appellee's interpretation reserving his rights as to the proper interpretation of the contract and then the parties could seek relief in the courts for construction of its terms.

Id. U.S. Bank contends this authority stands for the proposition that

> a) there can be no repudiation with respect to a dispute over a term of the agreement, b) there must be ab absolute refusal to perform according to the terms of the agreement and c) where there is disagreement as to a term, a party should tender performance . . . and seek judicial resolution, not be discharged from performing.

(Obj. at 6.)

The Court agrees with U.S. Bank's interpretation of Golf Carts, but concludes that it is not applicable here. As discussed, there was not a dispute with respect to a term of the contract; there simply was no term in the contract. Moreover, U.S. Bank here has plainly refused to perform according to the terms of the agreement. Specifically, U.S. Bank refused to settle the case as the parties agreed. Finally, Plaintiffs immediately sought judicial resolution of the controversy. The docket reflects no fewer than five settlement conferences were held after the terms of the settlement agreement were tentatively placed on the record before Judge Kobayashi in August 2010. Ultimately, Plaintiffs were forced

19

to file their Motion to Enforce Settlement.  It is hard to conceive of what more

Plaintiffs had to do to seek judicial resolution of the controversy.  Defendants'

reliance on <u>Golf Carts</u> is not persuasive.

In sum, U.S. Bank plainly repudiated the settlement agreement.

Plaintiffs appropriately withheld performance pending judicial resolution of the

repudiation and were entitled to seek specific performance per the terms of the

settlement agreement via their motion.  U.S. Bank's arguments to the contrary are

without merit.  In granting Plaintiffs the relief they seek, Judge Puglisi did not err

in establishing September 1, 2011 as the first payment date per the terms of the

settlement agreement.

In light of these conclusions, U.S. Bank's final contention, that Judge

Puglisi erred in inviting Plaintiffs to seek attorney's fees, is also without merit.

U.S. Bank contends that because Plaintiffs breached by failing to pay per the terms

of the settlement agreement, they should not be entitled to attorney's fees.  As the

Court found <u>supra</u>, however, Plaintiffs did not breach; they were excused from

making payments until resolution of this matter before the Court.  Accordingly,

Judge Puglisi did not err by inviting Plaintiffs to file a Motion for attorney's fees.

CONCLUSION

For these reasons, the Court **ADOPTS** the Magistrate Judge's

Findings and Recommendations.  (Doc. # 74.)

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, September 23, 2011.



_____
David Alan Ezra
United States District Judge

Constantino v. U.S. Bank, N.A., et al., CV 09-00066 DAE-RLP; ORDER
ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND
RECOMMENDATIONS